Filed 10/13/15  P. v. Hunwardsen CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JASON GRANT HUNWARDSEN,<br><br>    Defendant and Appellant. | F068675<br><br>(Super. Ct. No. CRM028776)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.  Mark Bacciarini, Judge.

Peter Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and John G. McLean, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Jason Grant Hunwardsen was convicted of domestic violence and criminal threat charges after stabbing Julie Bascue, his longtime girlfriend and the mother of his three children.  In essence, Hunwardsen raises five issues on appeal.

First, he argues that the trial court's denial of his motion for mistrial based on Bascue's references to his prior incarceration and parolee status was an abuse of discretion. Second, Hunwardsen argues the trial court erred in admitting Bascue's medical records from the hospital where she sought treatment after the stabbing because they were irrelevant to any contested issue. Third, Hunwardsen contends the trial court erred in admitting evidence of prior acts of domestic violence pursuant to Evidence Code section 1109 by failing properly to weigh the probative value and prejudicial effect under Evidence Code section 352. Fourth, Hunwardsen raises claims of ineffective assistance of counsel based on counsel's failure to move to redact certain parts of Bascue's taped police interview regarding the stabbing incident and on counsel's failure to move to exclude a prior incident of domestic violence for which he was not held to answer after the preliminary hearing. Fifth and finally, Hunwardsen argues that his constitutional rights were violated when the trial court adopted the parties' stipulation to forgo reporting of the court's oral instructions to the jury.

We disagree and affirm the judgment.

### FACTS AND PROCEDURAL HISTORY

Hunwardsen was charged by information in the Merced County Superior Court with willfully inflicting corporal injury upon the mother of his children (Pen. Code,[1] § 273.5, subd. (a); count 1) and making criminal threats (§ 422; count 2). The information alleged in connection with count 1 that Hunwardsen had a prior conviction for the same offense within seven years, pursuant to section 273.5, subdivision (e)(1). The information further alleged, in connection with both counts, that Hunwardsen personally inflicted great bodily injury within the meaning of section 12022.7, subdivision (e), and personally used a deadly weapon within the meaning of section 12022, subdivision (b)(1). Finally, the information alleged that Hunwardsen had

---

[1]Subsequent statutory references are to the Penal Code unless otherwise noted.

2.

a prior "strike" conviction (§§ 667, subds. (b)-(i), 1170.12), a prior serious felony conviction (§ 667, subd. (a)(1)), and served four prior prison terms within the meaning of section 667.5, subdivision (b).

The incidents underlying the charges in this matter occurred on August 4, 2013, at the apartment in Livingston that Hunwardsen and Bascue shared with their five-year-old daughter, one-year-old son, and two-month-old son. During the three-day jury trial, the prosecution called five witnesses: Bascue; Kimberly Casillas, a neighbor of Bascue's parents and acquaintance of Bascue; Livingston Police Detective Patrick Radke, who investigated the incidents underlying the instant charges; Los Banos Police Officer Surina Gonzales, who investigated a June 25, 2012, domestic violence incident involving Hunwardsen and Bascue; and Los Banos Police Officer Jairo Acosta, who investigated a December 17, 2012, domestic violence incident involving Hunwardsen and Bascue. The defense did not call any witnesses.

### Testimony of Julie Bascue

Bascue was the prosecution's first witness. She testified that she was stabbed on the left side of her neck in the early morning of August 4, 2013.[2] The stabbing severed a nerve that resulted in a permanent loss of sensation in her left ear and on the side of her head. Bascue described the circumstances of the stabbing. She testified that she had been sleeping in the back bedroom of her apartment with her two-month-old baby. She woke up around 7:45 a.m. and went into the living room where she found Hunwardsen and a woman called Jamie on the couch, touching each other. Bascue testified that she flew into a rage and lunged at Jamie. A fight ensued between the two of them during which Jamie grabbed a knife from the kitchen and stabbed Bascue in the neck.

---

[2]Bascue told the police when they came to the scene that she was stabbed with a six-inch surgical steel knife from her kitchen.

Bascue testified that she was furious at Hunwardsen for cheating on her with Jamie and decided to take revenge by accusing him of stabbing her. That evening she went to a neighbor's apartment and called the police. Bascue testified that she lied to the responding officers, telling them that Hunwardsen had stabbed and threatened her. The police called an ambulance to take her to Memorial Medical Center in Modesto in light of the numbness she was experiencing in and around her left ear. After Bascue denied that she told the emergency department doctor that her boyfriend had stabbed her, the prosecutor introduced a medical record documenting her hospital visit. The medical record states that Bascue told the treating doctor that her "significant other" had stabbed her that morning.

Bascue testified that Hunwardsen was not a violent person; on the contrary he was a good father and partner. Their family problems were a consequence of her own short temper and emotional instability.

*Testimony of Kimberly Casillas*

Kimberly Casillas was a neighbor of Bascue's parents in Los Banos and had known Bascue for about a year. Casillas testified that Bascue had confided in her about several beatings she had endured over the course of the past year. Casillas recounted specific incidents that Bascue had described.

Bascue had told Casillas about an incident that occurred when she and Hunwardsen drove to a canal bank to have sex in their car. After they had sex, Hunwardsen "wigged out" and "started hitting her and hitting her." "[H]e took the handle of the [car's] gear shift off" and "started whacking her and whacking" her to the point that her T-shirt was "soaked in blood" and "she thought she was going to die." Bascue was pregnant at the time and tried to get away but she tumbled down the canal bank and had no place to go. Casillas saw Bascue after this assault and noticed that she was "[a]ll swollen in the back of her ears" and had "cuts on both sides on the back of her ears."

4.

Casillas also described another incident that took place when she was driving to a Circle K store in Los Banos in her truck. She recognized Bascue running in a white T-shirt holding her stomach, so she pulled up and rolled down her window to talk to her. Bascue was "pale, shaking and scared." She said, "Kim, he's going to kill me. He's going to kill me.… He's going to take me out this time." Bascue was also afraid for her daughter, F., so Casillas drove Bascue to F.'s Head Start program to pick up the child. Bascue was "looking all around scared, holding her stomach" as she ran in to get F. and ran back to the truck. Casillas called a Merced County domestic violence hotline and made arrangements for Bascue and her children to go to a women's shelter. On the way to the shelter, Bascue wanted to stop at her parents' house to pick up some documents. Casillas drove Bascue to her parents' house and waited for her in her truck but Bascue never came back and Casillas did not pursue the matter.

Casillas next described an incident that occurred at the birth of Bascue's youngest son. Casillas testified that both Bascue and Bascue's eldest daughter, D., told her that when Bascue gave birth to her youngest son, Hunwardsen "kept telling her that the baby wasn't his" and slapped her in the face in the hospital room. Casillas also recounted a conversation she had with Bascue in October 2012. Casillas was at Bascue's house to buy a dryer from her. She noticed that both Bascue's eyes were "almost shut" and were "red like tomatoes, the color of tomatoes." Bascue said, "My man did this to me." Rolling her eyes, Bascue added that he was in jail and wanted her to testify in court that she had been beaten up by "some girl" who had been with him. Finally, Casillas described an incident when she asked Bascue and Hunwardsen, as well as another man, David, to help her move some furniture. All of them had to squeeze into the cab of Casillas's truck to go pick up the furniture. Casillas said she noticed that Hunwardsen appeared to be jealous that Bascue was sitting near David and gave her a "look" that clearly frightened her.

5.

*Evidence of acts of domestic violence*

### a.　　*August 4, 2013, domestic violence incident*

Officer Brian Wiley and Detective Patrick Radke of the Livingston Police Department investigated the August 4, 2013, stabbing incident underlying the instant case. The officers were part of the team that responded to the 911 call made that day. Officer Wiley interviewed Bascue at the scene. Detective Radke conducted a follow-up interview with Bascue eight days later. The complete tapes and transcripts of both interviews were admitted into evidence.

In her police interviews, Bascue described the incident in detail. She told the police that Hunwardsen asked her to have sex at about 8:00 a.m. that morning. He got behind her, but, instead of having sex, inexplicably put her in a severe choke hold. She recounted that, "He said that he was going to knock me out and you know, with the choke hold and um, tie me up and then talk to me after I woke up." Bascue "fought him with everything [she] had," and managed to get out of the choke hold. He then punched her in the head several times with both fists. When she screamed he said, "Shut up bitch or I'm going to fucking stab you." Bascue said she did not believe him but all of a sudden he stabbed her and she felt a rush of warm blood. He threatened to stab her in the head next if she did not stop screaming. Bascue thought he was going to kill her.

Later that day, they went to pick up their children from Bascue's parents' house in Los Banos. When they got home, Hunwardsen "cracked" Bascue on the forehead and told her that her head was about to feel the same way as her neck felt where he had stabbed her. He also threatened to "knock [her] fucking teeth out." At that point, Bascue opened the apartment door and ran downstairs and started yelling for help. Her downstairs neighbors took her in and called the police. The police arrested Hunwardsen and called an ambulance to take Bascue to the hospital.

6.

### b.    *June 25, 2012, domestic violence incident*

Officer Surina Gonzales of the Los Banos Police Department testified that she took a report of domestic violence from Bascue on June 25, 2012.  Officer Gonzales testified that she recorded Bascue's statement and took various photographs.  The photographs, as well as the tape and transcript of Bascue's interview, were introduced into evidence.  In the interview, Bascue told Officer Gonzales that she had had an argument with Hunwardsen at their house in Los Banos because he had thrown the only copies of professional photographs of her three older children into the swimming pool.  When she questioned him, he grabbed her hair and started hitting her in the face with his fists.  He then "grabbed a picture off the wall," threatened to destroy it too, and beat her with the plastic frame.  Bascue was scared and wanted to leave the house because she did not feel safe but he pressured her to stay because her "face look[ed] awful."  She had two black eyes and swollen cheeks.  When Hunwardsen got in the shower the next morning, Bascue gathered up her daughter and "just bolted out the back door."  In investigating this incident, Officer Gonzales also spoke to Hunwardsen.  Hunwardsen told her that Bascue "had caused the injuries to herself."

Bascue was asked about this incident during her testimony in the instant trial.  She presented a very different story about what happened that day.  She testified she had set off from her house early in the morning to do laundry at her parents' house about six blocks away.  She turned back upon realizing she had left baby formula behind at the house.  She returned to the house about 8 to 12 minutes after having left and "caught Jason and some girl having sex" on the couch.  She got into a fight with the woman, who beat her up.  After Hunwardsen left the house with the other girl, Bascue went to the police department to report the incident.

### c.    *December 17, 2012, domestic violence incident*

Officer Jairo Acosta of the Los Banos Police Department testified that on December 17, 2012, he took a report of domestic violence from Bascue at a hospital in

Los Banos.  The hospital had called the police when Bascue sought assistance from a security guard there.  Bascue had a "knot on her forehead" that was the "size of a golf ball."  Bascue told Officer Acosta that Hunwardsen had punched her as they were walking on a street across from the hospital.  Hunwardsen was prosecuted and convicted of a felony violation of section 273.5, subdivision (a), for this incident.

In her testimony at the instant trial, Bascue denied that she gave a statement to Officer Acosta regarding this incident.

### Verdict and sentencing

In the instant case, the jury convicted Hunwardsen of both counts and also found the enhancements for infliction of great bodily injury and use of a deadly weapon to be true.  Hunwardsen admitted the prior conviction and prior prison allegations in subsequent bifurcated proceedings.  He was sentenced to 26 years 4 months' imprisonment.[3]

## DISCUSSION

### I.    Hunwardsen's motion for mistrial

Hunwardsen contends that the trial court abused its discretion in not declaring a mistrial after Bascue referenced Hunwardsen's prior incarceration and parolee status in her trial testimony.  The People respond that Hunwardsen was not prejudiced because the court ordered the references stricken, and the jury was appropriately admonished.

Bascue briefly mentioned Hunwardsen's prior incarceration when she was explaining the circumstances of the June 25, 2012, incident.  The prosecutor asked whether the argument was triggered because Hunwardsen had destroyed photographs of her three older children.  Bascue responded as follows:  "I had boxes of letters from him from when he was incarcerated and I had saved them, [years'] worth, and the pictures

---

[3]Hunwardsen was simultaneously sentenced to a four-year consecutive term in a separate matter involving escape by use of force or violence and a concurrent three-year term in a probation violation matter, for a total of 30 years 4 months for all three cases.

8.

were mixed in with some of those boxes and he thought he was just destroying the letters."

Bascue also indicated that Hunwardsen was on parole. When the prosecutor asked her whether she had confided in Casillas about various incidents of domestic violence, Bascue demurred, stating that she had told Casillas that she had falsely accused Hunwardsen of abuse. Specifically, Bascue stated, "I told her that what better revenge than to send a parolee back to prison on domestic violence charges, you know."

Defense counsel moved for a mistrial based on Bascue's references to Hunwardsen's prior incarceration and parolee status. The trial court considered the defense motion for mistrial but concluded that any prejudice from Bascue's brief comments could be cured with an appropriate admonishment to the jury. Counsel had previously stipulated that Hunwardsen had suffered a prior domestic violence conviction under section 273.5, and the trial court had ruled that the prior conviction was admissible pursuant to Evidence Code section 1109.[4] Counsel were in agreement that the curative admonishment should be given to the jury at the same time as the advisement regarding Hunwardsen's prior conviction.[5] Accordingly, immediately before the close of the People's case, the court admonished the jury, per stipulation of counsel, as follows:

> "The parties stipulate and agree that [Hunwardsen] was convicted of a felony violation of Penal Code section 273.5(a) on May 21st, 2013. Said conviction arising out of a December 17th, 2012, Los Banos investigation. You may not consider for any purpose [Hunwardsen's ] incarceration for

[4]Hunwardsen was convicted under section 273.5 based on the December 17, 2012, domestic violence incident with Bascue. At the time of the instant trial, he was on felony probation in that case.

[5]During a discussion between the parties and the trial judge outside the presence of the jury, the prosecutor indicated that, at the end of the prosecution's case, he would move to enter the parties' stipulation that Hunwardsen had a prior conviction under section 273.5. Defense counsel stated that it "would be great" if, directly after entering the stipulation about Hunwardsen's prior conviction, the court were to admonish the jury to the effect that any testimony regarding his prior incarceration be stricken.

this conviction. Any testimony regarding [his] having been placed on probation or parole or having been incarcerated is stricken from the record."

"There is little doubt exposing a jury to a defendant's prior criminality presents the possibility of prejudicing a defendant's case and rendering suspect the outcome of the trial." (*People v. Harris* (1994) 22 Cal.App.4th 1575, 1580.) However, a trial court should grant a motion for mistrial "only when '"a party's chances of receiving a fair trial have been irreparably damaged"'" (*People v. Ayala* (2000) 23 Cal.4th 225, 282), that is, if it is "apprised of prejudice that it judges incurable by admonition or instruction." (*People v. Haskett* (1982) 30 Cal.3d 841, 854.) Although most cases involve prosecutorial or juror misconduct as the basis for a motion for mistrial, a witness's volunteered statement can also provide the basis for a finding of incurable prejudice. (*Harris*, *supra*, at p. 1580.) "Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions." (*Haskett*, *supra,* at p. 854; see also *People v. Allen* (1978) 77 Cal.App.3d 924, 935 ["It is only in the exceptional case that 'the improper subject matter is of such character that its effect … cannot be removed by the court's admonitions.'"].) Accordingly, we review a trial court's ruling on a motion for mistrial for abuse of discretion. (*People v. Valdez* (2004) 32 Cal.4th 73, 128.)

Applying these standards, we conclude the trial court did not abuse its discretion in denying the mistrial motion. (See *People v. Avila* (2006) 38 Cal.4th 491, 572 [mistrial properly denied when jury admonished to disregard prosecution witness's testimony that he advised others to "'keep cool'" because defendant "'barely got out of prison,'" was crazy, and would kill them]; *People v. Stinson* (1963) 214 Cal.App.2d 476, 482-483 [denial of mistrial where police officer indicated that defendant was on parole was not reversible error because jury was admonished to disregard statement, and trial record pointed emphatically to defendant's guilt].) Upon advising the jury of the parties' stipulation that Hunwardsen had previously been convicted of a felony violation of

10.

section 273.5, subdivision (a), the court specified that the jury could not consider Hunwardsen's incarceration for this conviction for any purpose. With respect to Bascue's testimony, the court ordered that any testimony regarding Hunwardsen having been incarcerated or placed on probation or parole was stricken from the record. As we presume the jury followed the court's instructions (*People v. Boyette* (2002) 29 Cal.4th 381, 436), any prejudice from Bascue's references was cured by the court's admonition.

Hunwardsen's contention that the trial court's admonishments were insufficient in part because they were belated is unpersuasive since, as discussed above, the court deferred to defense counsel's sound tactical choice regarding the timing of the admonishment. Moreover, given the strength of the prosecution's case, Hunwardsen's reliance on *People v. Allen*, *supra*, 77 Cal.App.3d 924, is misplaced.

In *Allen*, a witness improperly referenced the defendant's parolee status; the trial court's denial of the ensuing motion for mistrial was held to be reversible error on appeal because the well-balanced state of the evidence made the case an exceptionally close one. (*People v. Allen, supra,* 77 Cal.App.3d at p. 935.) The same cannot be said of the instant case in light of Bascue's statements to the police and to medical staff at the hospital where she was treated for her stab wounds; the testimony of Kimberly Casillas; and the documented history of violence in Hunwardsen and Bascue's relationship.

Even if admission of Bascue's references to prior prison status and parole were erroneous, the error is harmless. The jury knew Hunwardsen had been previously convicted of a domestic-violence-related offense (properly admitted under Evid. Code, § 1109) and had considered other allegations of domestic violence. It is not reasonably probable that Hunwardsen would have obtained a better result if the jury had not heard Bascue's remarks. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

## II.    *Bascue's hospital record*

Hunwardsen argues that the trial court erred in admitting a medical record from Bascue's hospital visit on the day she was stabbed. The medical record documents

11.

Bascue's discussion with Kathryn L. Hall Boyer, M.D., who treated Bascue at the hospital's emergency department. The record states in relevant part as follows:

> "Julie Bascue is a 35 year old female who was BIBA as a Tier 1 Trauma with c/o left-sided facial swelling, numbness, tingling, and the sensation of irritation s/p being stabbed in the neck just below the left ear at 0800 today. Pt reports that she was stabbed this morning at approximately 0800 by her significant other with a 6 inch surgical instrument. She also reports that the perpetrator choked her, and said, 'If she screamed he would stab her.' He then grabbed the knife and tried to kill her. After being stabbed she states she took a shower, cleaned her wound, and cleaned up the house of all the blood. EMS was called at the time of the event, but refused transport at that time. EMS reports that the perpetrator was arrested. No other complaints."

The admissibility of the record was addressed at the hearing on the parties' motions in limine. The defense objected to the record on hearsay grounds. The court overruled the hearsay objection, reasoning that the record was admissible as a business record because it was accompanied by the requisite declaration from the custodian of records. The court further ruled that the record would be admissible to impeach Bascue if her trial testimony was inconsistent with the medical record. Finally, the court found that the record was admissible as a "statement of [Bascue's] then existing physical or mental condition, which is relevant to the issue of corporal injury." At trial, Bascue testified that a woman called Jamie had stabbed her and denied that she had told her treating doctor that her boyfriend had stabbed her. The prosecutor then introduced the medical record as a business record and impeached her with the portion set forth above.

Hunwardsen now argues that the trial court erred in admitting the medical record because it was not relevant to any disputed issue at trial and was highly prejudicial. Specifically, he contends that the description of Bascue's injuries contained in the medical record was inadmissible because the fact and extent of Bascue's injuries were not disputed issues in the case. He further contends that the record was highly prejudicial

because it indicated that Bascue had told her doctor that Hunwardsen had stabbed her.[6] Alternatively, Hunwardsen argues that, to the extent his counsel failed to raise a relevancy objection to the medical record at trial, she was ineffective. The People respond that, since Hunwardsen's counsel objected to the medical record only on hearsay grounds, his instant challenge is forfeited. The People further argue that Hunwardsen's claim nonetheless fails on the merits because the trial court properly admitted the medical record.

We agree that, since Hunwardsen objected only on hearsay grounds below, he has forfeited the claim that the record was inadmissible because it was not relevant to any disputed issue. (*People v. Seijas* (2005) 36 Cal.4th 291, 302 ["'[A] defendant's failure to make a timely and specific objection' on the ground asserted on appeal makes that ground not cognizable. [Citations.]"]; *People v. Boyette*, *supra*, 29 Cal.4th at p. 424 ["'Specificity is required both to enable the court to make an informed ruling on the motion or objection and to enable the party proffering the evidence to cure the defect in the evidence.'"].) More importantly, Hunwardsen's challenge also fails on the merits because the trial court properly admitted the medical record.

A trial court's exercise of discretion in admitting or excluding evidence is reviewable for abuse (*People v. Alvarez* (1996) 14 Cal.4th 155, 201) and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Jones* (1998) 17 Cal.4th 279, 304.) As discussed below, Hunwardsen fails to meet this standard.

As a preliminary matter, both the description of Bascue's injuries and her statements about Hunwardsen's actions contained in the medical record constitute

_____

[6]In his reply brief, Hunwardsen clarifies that his argument is not that the record was prejudicial under Evidence Code section 352 but, rather, that the admission of the record constituted prejudicial error in that it "was likely to have affected the verdict."

relevant evidence, as noted by the trial court. (See Evid. Code, § 210.) Although Hunwardsen contends that the fact and extent of Bascue's injuries were not in dispute, a defendant's "not guilty" plea places all elements of the crime in dispute. (*People v. Lindberg* (2008) 45 Cal.4th 1, 23.) Consequently, the prosecution was obligated to prove beyond a reasonable doubt that Bascue suffered a physical injury that resulted in a traumatic condition. (§ 273.5, subd. (a); see also CALCRIM No. 840.) Moreover, with respect to the "great bodily injury" enhancement alleged in the information, the prosecution was required to establish that Bascue suffered significant or substantial physical injury. (§ 12022.7, subds. (e) and (f); see also CALCRIM No. 3163.) The description of Bascue's injuries in the medical record was relevant in light of the prosecution's burden of proof regarding the elements of the charged offenses and the enhancement allegations. Bascue's statements in the medical record to the effect that Hunwardsen had stabbed and choked her and tried to kill her were relevant with regard to Bascue's credibility (in light of her denial at trial that she made these statements) and to the ultimate issue of Hunwardsen's guilt or innocence. (See Evid. Code, §§ 210 [relevant evidence includes evidence relevant to credibility of witness], 780 [fact finder may consider matters relevant to truthfulness of witness's testimony].)

We further find that the trial court properly admitted the medical record as a subpoenaed business record pursuant to Evidence Code section 1271,[7] the business-records exception to the hearsay rule, and Evidence Code sections 1560 through 1564, which govern the transmittal and admissibility of subpoenaed business records.[8] The

---

[7]Evidence Code section 1271 removes hearsay restrictions if "(a) [t]he writing was made in the regular course of a business; [¶] (b) [t]he writing was made at or near the time of the act, condition, or event; [¶] (c) [t]he custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] (d) [t]he sources of information and method and time of preparation were such as to indicate its trustworthiness."

[8]Evidence Code section 1561 provides in part: "(a) the records [produced pursuant to subpoena] shall be accompanied by the affidavit of the custodian or other

14.

latter sections ordinarily allow for records to be admitted without testimony by the custodian, so long as the proponent provides an affidavit from the custodian that satisfies the elements of the business records exception, i.e., Evidence Code section 1271. (*Cooley v. Superior Court* (2006) 140 Cal.App.4th 1039, 1044-1045.)

Here, the medical record at issue was obtained pursuant to a subpoena duces tecum and was accompanied by an affidavit from the authorized custodian of records for Memorial Medical Center in compliance with Evidence Code section 1561. Hunwardsen argues that the custodian's affidavit did not satisfy the elements of Evidence Code section 1271 because "[a]n examination of the Declaration of Custodian of Records shows no proof that the writing was made at or near the time of the events, or that the custodian attested to the identity and mode of preparation of the records." Hunwardsen's argument fails because the custodian's affidavit clearly attests that the records being provided in response to the subpoena are medical records for Julie Bascue that were prepared by Memorial Medical Center personnel in the ordinary course of business at or near the time of the act, condition, or event. Accordingly, the trial court did not abuse its discretion in finding that the medical record was admissible as a subpoenaed business record pursuant to Evidence Code sections 1271, 1561, and 1562.

qualified witness, stating in substance each of the following: [¶] (1) The affiant is the duly authorized custodian of the records or other qualified witness and has authority to certify the records. [¶] (2) The copy is a true copy of all the records described in the subpoena …. [¶] (3) The records were prepared by the personnel of the business in the ordinary course of business at or near the time of the act, condition, or event. [¶] (4) The identity of the records. [¶] (5) A description of the mode of preparation of the records."

Evidence Code section 1562 provides in part: "If the original records would be admissible in evidence if the custodian or other qualified witness had been present and testified to the matters stated in the affidavit, and if the requirements of Section 1271 have been met, the copy of the records is admissible in evidence. The affidavit is admissible as evidence of the matters stated therein pursuant to Section 1561 and the matters so stated are presumed true…. The presumption established by this section is a presumption affecting the burden of producing evidence."

Furthermore, the trial court correctly found that Bascue's complaints about the tingling and irritation from her stab wound, as told to her treating doctor and reflected in the medical record, were admissible pursuant to Evidence Code section 1250 as a statement of her then-existing physical state.

As to Bascue's statements regarding Hunwardsen's actions reported in the medical record, these were admissible pursuant to Evidence Code section 1235 as prior inconsistent statements. Evidence Code section 1235 provides that "[e]vidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770." (*People v. Johnson* (1992) 3 Cal.4th 1183, 1219 ["A statement by a witness that is inconsistent with his or her trial testimony is admissible to establish the truth of the matter asserted in the statement under the conditions set forth in Evidence Code sections 1235 and 770."].) Evidence Code section 770, in turn, permits the admission of "extrinsic evidence of a statement made by a witness that is inconsistent with any part of his testimony at the hearing" if the witness had the opportunity to explain or deny the statement or if the witness had not been excused from giving further testimony in the action. Here, the requirements of both Evidence Code sections 1235 and 770 were met. For this reason, Bascue's incriminating statements reported in the medical record were admissible to impeach Bascue's trial testimony, as the trial court ruled.

Since we have resolved Hunwardsen's claim against him on the merits, we need not consider his argument that counsel was ineffective for failing to object to the medical record on relevancy grounds.

## III. *Evidence of Hunwardsen's prior acts of domestic violence*

Hunwardsen argues that the trial court abused its discretion in admitting evidence of his prior acts of domestic violence. The People respond that the trial court properly admitted the evidence under Evidence Code section 1109 and properly exercised its discretion under Evidence Code section 352.

16.

## A.    Background

Prior to trial, defense counsel, aware that the prosecution intended to introduce evidence under Evidence Code section 1109 of Hunwardsen's prior acts of violence against Bascue, moved to exclude the evidence pursuant to Evidence Code section 352 on the basis that it was unduly prejudicial.  The trial court responded as follows:

> "Here's the thing about [Evidence Code sections] 1108 and 1109.  The [L]egislature has clearly stated to the courts we have a preference for admission of this evidence because of these concerns, about the difficulty, quite frankly, of proving sexual assault and domestic violence cases.  So I read the cases as saying there is a preference for admissibility.
>
> "In this case, it all sounds like this relationship turned quite turbulent within a relatively short period of time.  That there is not going to be an undue consumption of time to have the officers testify here's what she said.  She'll deny it, probably, on the stand.  And then they will impeach her with the officer, she told me X, Y and Z.  So I don't find it to be an undue consumption of time.
>
> "The objection is noted, but I have exercised my discretion under Evidence Code section 352.  I do find it to be highly probative on the issue of whether this incident happened.  I agree with the [L]egislature and the [G]overnor's decision to give the prosecutors this tool because of the societal and social impact this crime has.  So I do exercise my discretion.  I do find the probative value not to be substantially outweighed by the risk of undue prejudice or the consumption of time, so it is admissible."

## B.    Analysis

Hunwardsen challenges the trial court's decision to admit evidence of his prior acts of domestic violence against Bascue on the basis the court incorrectly assumed that Evidence Code section 1109 creates a presumption in favor of admitting such evidence.  He argues that, because the court misapprehended section 1109 as creating a presumption in favor of admissibility, it could not fairly apply the balancing test of Evidence Code section 352.  He contends the admission of prior-act evidence under section 1109 was therefore an abuse of discretion.  The People respond that the trial court properly exercised its discretion in admitting the prior-act evidence under sections 1109 and 352.

17.

Evidence Code section 1109 generally provides that where, as here, a defendant is accused of a crime involving domestic violence, "evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." (Evid. Code, § 1109, subd. (a)(1).) Although evidence of prior criminal acts is ordinarily inadmissible to show a defendant's disposition to commit such acts (Evid. Code, § 1101), section 1109 sets forth a domestic violence exception to the general rule whereby evidence of a defendant's other acts of domestic violence is admissible to show a propensity to commit domestic violence crimes. (*People v. Brown* (2011) 192 Cal.App.4th 1222, 1232-1233.) The admissibility of evidence of prior acts of domestic violence is committed to the sound discretion of the trial court, and its decision will not be reversed on appeal absent a showing of an abuse of discretion. (*People v. Poplar* (1999) 70 Cal.App.4th 1129, 1138.)

Even if the evidence is admissible under Evidence Code section 1109, the trial court must still determine, pursuant to Evidence Code section 352, whether the probative value of the evidence is substantially outweighed by the risk of undue prejudice, confusion, or consumption of time. (*People v. Hoover* (2000) 77 Cal.App.4th 1020, 1024.) The court enjoys broad discretion in making this determination, and the court's exercise of discretion under section 352 "will not be disturbed on appeal except upon a showing that it was exercised in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]" (*People v. Brown, supra*, 192 Cal.App.4th at p. 1233; *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314.)

Here, the trial court correctly noted that Evidence Code section 1109 embodies a preference for the admissibility of propensity evidence related to domestic violence in contrast to Evidence Code section 1101, which sets forth a general prohibition on the use of propensity evidence. (See *People v. Johnson* (2000) 77 Cal.App.4th 410, 420 ["[T]he California Legislature has determined the policy considerations favoring the exclusion of evidence of uncharged domestic violence offenses are outweighed in criminal domestic

violence cases by the policy considerations favoring the admission of such evidence."];
*People v. Brown* (2000) 77 Cal.App.4th 1324, 1333-1334, fn. omitted ["[I]t is apparent that the Legislature considered the difficulties of proof unique to the prosecution of these crimes when compared with other crimes where propensity evidence may be probative but has been historically prohibited."].) The trial court's comments do not indicate that it understood section 1109 as setting forth a *presumption* in favor of the admissibility of a defendant's prior acts of domestic violence. On the contrary, the trial court specifically noted that it exercised its discretion under Evidence Code section 352 and determined that the probative value of the proffered evidence was not substantially outweighed by the risk of undue prejudice or the consumption of time. The record does not support Hunwardsen's contention that the trial court premised the exercise of its discretion on faulty legal principles that tipped the scales in favor of admissibility, thereby precluding a fair application of the section 352 balancing test. Accordingly, we will not disturb the trial court's ruling.

## IV. *Ineffective-assistance-of-counsel claims*

### A. *Failure to redact tape of Bascue's follow-up interview with Officer Radke*

Hunwardsen contends that defense counsel was ineffective in failing to move to redact the tape of Bascue's follow-up interview with Officer Radke regarding the instant offense. Defense counsel made no objection to the admission of the tape, which was subsequently played in its entirety for the jury. Hunwardsen argues that defense counsel should have objected to some of Bascue's statements during the interview because they were irrelevant or speculative. The People respond that counsel's failure to object reflected a tactical decision on her part and that, in any event, Hunwardsen cannot demonstrate any prejudice on account of the failure to object.

Hunwardsen cites three instances from Bascue's follow-up interview that he claims represent speculative or irrelevant material that counsel should have objected to. First, Hunwardsen argues that Bascue's opinion that she believed Hunwardsen was going

19.

to go "all the way" and kill her, had she not managed to get out of his choke hold, was highly speculative. He argues that this statement was also extremely prejudicial because it suggested to the jury that Hunwardsen wanted to kill Bascue. Hunwardsen next contends that Bascue was speculating when she stated that Hunwardsen insisted on going to Los Banos with her the day he stabbed her because he "must have known" that she was planning to call the police about the stabbing. Finally, Hunwardsen argues that Bascue's statement that her daughter F. had witnessed Hunwardsen assaulting her the previous summer was speculative and not relevant to any contested issue in the trial. Hunwardsen contends these statements were "geared to elicit sympathy for Julie, and antipathy toward [Hunwardsen]." He argues that defense counsel was ineffective for failing to object to the unredacted tape because the above-referenced statements were prejudicial and their admission constitutes reversible error.

To establish ineffective assistance of counsel, a defendant must show that counsel's performance "fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 694; see also *People v. Hester* (2000) 22 Cal.4th 290, 296.) It is not necessary to determine whether counsel's challenged action was professionally unreasonable in every case, however. If the reviewing court can resolve the ineffective-assistance claim by proceeding directly to the issue of prejudice—i.e., the issue of whether there is a reasonable probability that the outcome would have been different absent counsel's challenged actions or omissions—it may do so. (*Strickland v. Washington, supra*, at p. 697.)

We reject Hunwardsen's claim that his counsel was ineffective in failing to move to redact the tape of Bascue's follow-up police interview. Even assuming, arguendo, that the statements Hunwardsen now complains of are speculative, he has not demonstrated that counsel's failure to move to exclude them was prejudicial. Hunwardsen contends

that counsel should have moved to exclude Bascue's statement that she believed Hunwardsen would very well have killed her. This is evidence of her state of mind, and there was other ample evidence before the jury indicating that Hunwardsen had tried to kill Bascue or threatened to do so. Bascue's medical record from Memorial Medical Center, admitted into evidence in the course of Bascue's testimony, indicated that Bascue told the emergency department doctor who treated her stab wound that Hunwardsen choked her, threatened to stab her, and then "tried to kill her." Furthermore, at one point in the police interview at issue here, Bascue describes a time when Hunwardsen viciously attacked her while they were driving in their car; she was forced to jump out of the car because he "just kept telling" her that he was going to kill her. The jury also heard Kimberly Casillas describe an occasion when she had run into Bascue on the street, and Bascue, clearly terrified, told Casillas, "Kim, he's going to kill me. He's going to kill me.… He's going to take me out this time."

Similarly, counsel's failure to move to redact Bascue's statement that Hunwardsen went with her to Los Banos on the day he stabbed her because he knew she was going to call the police was not prejudicial in light of the evidence that Bascue had, in fact, talked to the police several times to report incidents of domestic abuse involving Hunwardsen; the evidence that he had been prosecuted for other incidents of domestic violence and had a prior domestic violence conviction; and the substantial and detailed evidence regarding Hunwardsen's numerous prior assaults on Bascue.

Finally, counsel's failure to move to exclude Bascue's statement that her daughter F. had witnessed Hunwardsen's assault on Bascue the previous summer was also not prejudicial. Hunwardsen contends this statement was prejudicial because it "paint[ed] [Hunwardsen] as a brutal monster, who would beat his girlfriend in front of her young daughter." However, Bascue described far worse incidents of abuse in other parts of her police interview. For example, Bascue recounted an incident when she was pregnant with her youngest son, and Hunwardsen brutally attacked her with the gear-shift knob

21.

from their car. Bascue also describes an incident when he slapped her "hella hard" in front of her older daughter at a time when Bascue was in the hospital having just delivered a baby with severe medical problems. Under these circumstances, redaction of the police interview to exclude the statements at issue here would not have affected the outcome of this case. The record does not support Hunwardsen's ineffective assistance of counsel claim.

## B.     *Admission of June 25, 2012, domestic violence incident*

Hunwardsen next argues that his counsel was ineffective in failing to move to exclude evidence of a prior domestic violence incident involving him and Bascue that took place on June 25, 2012, in Los Banos.[9] Officer Surina Gonzales investigated this incident, and Hunwardsen was prosecuted. However, at the preliminary hearing, the court found there was insufficient evidence to hold Hunwardsen to answer and dismissed the case. Hunwardsen now contends that defense counsel should have moved to exclude evidence of this incident under Evidence Code section 352 because Evidence Code section 1109 conditions the admission of such prior-act evidence upon a careful weighing of its probative value and prejudicial effects pursuant to section 352. Hunwardsen asserts that counsel was ineffective in failing to argue, inter alia, that evidence of the June 25, 2012, incident would be unduly prejudicial given that the charges based on this incident not only did not result in a criminal conviction but were dismissed at the preliminary-hearing stage. The People respond that Hunwardsen has failed to establish deficient performance as well as prejudice. Based on the standards discussed above, we reject Hunwardsen's claim of ineffective assistance of counsel.

_____

[9]We have characterized this incident as the June 25, 2012, incident as that is how it is referred to throughout the trial record; however, we note that Officer Gonzales testified that she took a statement from Bascue regarding this incident at 8:30 a.m. on June 25, 2012, and the events in question took place the previous night, i.e., either during the early morning hours of June 25, 2012, or the night of June 24, 2012.

During the hearing on the parties' motions in limine, defense counsel objected, pursuant to Evidence Code section 352, to all of the prior-act evidence that the prosecution sought to introduce pursuant to Evidence Code section 1109. Defense counsel stated that her specific objection was that this evidence was "unduly prejudicial." The court overruled her objection, noting that the probative value of the prior-act evidence was not substantially outweighed by the risk of undue prejudice or consumption of time.

Although defense counsel did not specifically object to evidence of the June 25, 2012, incident on grounds that it was unduly prejudicial because the charges based on this incident were dismissed at the preliminary-hearing stage, the parties and the judge discussed this aspect of the June 25, 2012, incident in some detail during the in limine proceedings. The prosecutor explained that the case based on the June 25, 2012, incident was the first criminal domestic violence case brought against Hunwardsen and that at this point the People had additional evidence regarding the June 25, 2012, incident that went beyond the limited evidence that was presented at the preliminary hearing in the prior case. The prosecutor argued that, in light of the additional evidence, the defense should not be able to leverage the prior dismissal to argue that the evidence regarding this incident was weak. Defense counsel agreed that she would not make that argument to the jury.

When, in the course of the trial, the prosecution addressed the June 25, 2012, incident and introduced evidence related to that incident, defense counsel did not object on any grounds, including the ground that charges related to that incident had been dismissed at the preliminary-hearing stage. The record does not reveal all of the evidence presented at the preliminary hearing in the prior case based on the June 25, 2012, incident or how it compared to the evidence that defense counsel expected the prosecutor to present regarding the same incident at the current trial. However, defense counsel could have made a reasoned decision not to object to evidence of the June 25, 2012, incident

23.

based on the prosecutor's account that he would present additional evidence regarding that incident at the instant trial.[10] Defense counsel presumably knew what evidence the prosecutor intended to present as indicated by the fact that she did not challenge his account. Depending on the nature of the additional evidence, the fact that Hunwardsen was not held to answer the charges after the prior preliminary hearing would not necessarily be a determinative or even persuasive factor in assessing the admissibility of evidence regarding the June 25, 2012, incident pursuant to Evidence Code sections 1109 and 352.[11] (*People v. Brown, supra*, 192 Cal.App.4th at p. 1233 [under Evid. Code, § 1109, "evidence of a prior act [of domestic violence] may be introduced as propensity evidence even if the defendant was acquitted of criminal charges based upon that act"].)

The record does not support a claim of deficient performance by counsel since counsel could reasonably have elected not to challenge the evidence of the June 25, 2012, incident on the grounds Hunwardsen now proposes. In any event, Hunwardsen has failed to establish prejudice given the ample evidence regarding other prior incidents of domestic violence that was presented to the jury.

## V.     *Failure to report the court's reading of jury instructions*

Hunwardsen contends he was deprived of his due process right to meaningful appellate review and the right to a jury trial when the court permitted the parties to

---

[10]In the instant trial, Officer Surina Gonzales, who investigated the June 25, 2012, incident in Los Banos, testified about her investigation and the statements she took from Bascue and Hunwardsen. In addition, the prosecution introduced into evidence Officer Gonzales's interview of Bascue and several photographs she took as part of her investigation. The prosecution also moved into evidence the transcript of Bascue's direct examination from the preliminary hearing held in the prior criminal case (in which Hunwardsen was prosecuted for the June 25, 2012, incident).

[11]For prior-act evidence to be considered as propensity evidence pursuant to Evidence Code section 1109, the prosecution has to prove by a preponderance of the evidence that the defendant committed the prior act at issue. (*People v. Johnson* (2010) 185 Cal.App.4th 520, 529; see also CALCRIM No. 852; CALJIC No. 2.50.02.)

stipulate that the court reporter need not report the court's reading of instructions to the jury. We disagree.

Hunwardsen had a right to have the trial court's reading of jury instructions recorded by the court reporter (*People v. Gloria* (1975) 47 Cal.App.3d 1, 5-6) and to place the transcript of the oral instructions in the appellate record (Cal. Rules of Court, Rule 8.320(c)(4)). However, defense counsel's stipulation that the oral instructions need not be reported waived these rights and forfeited any claim of error on appeal. (*People v. Ladd* (1982) 129 Cal.App.3d 257, 263 ["By stipulating that the instructions need not be reported, defendant has waived any claim of error on appeal."]; *People v. DeFrance* (2008) 167 Cal.App.4th 486, 495 ["Generally, defendant's stipulation not to record a portion of the trial forfeits the claim the record is inadequate for appellate review."].)

Furthermore, Hunwardsen has made no showing that the failure to record the instructions violated his due process rights. (*People v. Garrison* (1989) 47 Cal.3d 746, 780-781 ["The parties stipulated that the court reporter might be excused from reporting the reading of the jury instructions. In light of counsel's stipulation and defendant's failure to suggest that there was any deviation in the reading from the typed copies contained in the record, we find no violation of due process."].) Here, defense counsel was present when the judge orally instructed the jury. If the judge had deviated from the written instructions, defense counsel presumably would have objected or otherwise sought to correct the deviation. Indeed, Hunwardsen does not claim on appeal that there was any discrepancy between the written and oral instructions. Under these circumstances, Hunwardsen has not shown that his due process right to an adequate record on appeal was curtailed in any meaningful way. (*People v. Howard* (1992) 1 Cal.4th 1132, 1165 [although defendant is entitled to record that is adequate to permit meaningful appellate review, it is defendant's burden to show that any deficiencies in record are prejudicial].)

25.

Hunwardsen's reliance on *Harmon v. Marshall* (9th Cir. 1995) 69 F.3d 963 and *People of Territory of Guam v. Marquez* (9th Cir. 1992) 963 F.2d 1311, is misplaced as those cases are factually distinguishable. *Harmon* held that a trial court's "wholesale failure" to instruct the jury (i.e., the failure to provide both written *and* oral instructions) results in the deprivation of the basic right to jury findings on the elements of the charged offenses. (*Harmon, supra,* at p. 967.) *Marquez* held that a trial court's reliance solely on written instructions and refusal, over the defense's objection, to instruct the jury orally regarding the elements of a charged offense violates due process because there is no way to confirm whether the jury read the written instructions. In contrast, here, the jury was instructed both orally and in writing, in the presence of defense counsel, who did not raise any objection regarding the judge's reading of the instructions and stipulated that the oral instructions need not be reported. Unlike *Harmon* and *Marquez*, the facts at issue here do not support Hunwardsen's claims of constitutional injury. (*People v. Garrison, supra,* 47 Cal.3d at pp. 780-781; *People v. DeFrance*, *supra*, 167 Cal.App.4th at p. 496 [when there was no showing of prejudice, "absence of a record of the oral instructions given did not deprive defendant of due process or the right to a fair trial"].) Finally, we reject Hunwardsen's argument that counsel's stipulation was ineffective because a personal waiver of his fundamental constitutional rights was required in order for the court to forgo transcription of the court's oral instructions to the jury. Hunwardsen cites no authority for this proposition nor does he persuasively demonstrate why, under the present circumstances, a personal waiver was required.

## *DISPOSITION*

The judgment is affirmed.

_____
Smith, J.

WE CONCUR:


_____
Detjen, Acting P. J.


_____
Peña, J.